**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:21-CR-220 (VAB) |
| | : | |
| v. | : | |
| | : | |
| MAHESH PATEL, ROBERT HARVEY, | : | |
| HARPREET WASAN, STEVEN | : | |
| HOUGHTALING, TOM EDWARDS, AND | : | April 19, 2023 |
| GARY PRUS | | |

**DEFENDANT GARY PRUS'S OPPOSITION TO GX 109**

If nothing else -- at least until the Government's representation late this afternoon that the subject of GX 109 (employee Mohammad K.) was "100 percent" within the category of people encompassed by the Indictment – it was supposed to be clear that the market allocation at issue was limited to engineers and other skilled-labor employees performing work on outsource projects for Pratt.  Emblematic of the "lac[k of] clarity about the nature and scope" of the alleged conspiracy that infuses this case, *see* Ruling and Order on government's Offer of Proof and Motion to Admit Co-Conspirator Statements, ECF 536, at 6, days before the close of its evidence, the government seeks to admit a May, 2015 email concerning an unskilled warehouse worker who had nothing to do with outsourcing at all.

To understand the fundamentally flawed and misleading approach this proposed exhibit represents, the Court should be aware that PSI – a small, "boutique" engineering firm, as government witness Lavoie described it --  is organized into two distinct lines of business: an outsourcing group of skilled engineers, comprised of  "cold section" and "hot section" teams devoted almost exclusively to outsourcing projects for Pratt during the years in questions; and a completely separate organization that performed hardware assembly and manufacturing work on

a contract, purchase order basis that had nothing to do with the "SOW" outsourcing relationship

with Pratt and GES that has been the focus of this case.

The difference between these two lines of business could not be clearer:

> ➢ Whereas PSI's outsourcing employees work pursuant to SOW's defining deliverables in strictly electronic form, consisting of design and analysis functions,
>> ➢ PSI's operations division performs work pursuant to RFQs and associated purchase orders, with deliverables stated in terms of hardware, to be manufactured by PSI in-house.
> ➢ Whereas PSI's outsourcing services were performed primarily for Pratt, and required the employment of large numbers of skilled engineers,
>> ➢ PSI's in-house manufacturing division, although also utilizing skilled engineers, also required the handling of materials and component parts that require entry-level shipping and receiving clerks, such as the subject named in the proffered email, as reflected in the Job Description he signed at the commencement of employment. See Ex. A, attached.

In connection with Mr. Prus's opposition to the admission of GX 109, the undersigned

provides the government and the Court with the following documents:

1. The Application for Employment submitted by MK to PSI on September 19, 2014.

2. The October 2, 2014 Employment Offer letter from PSI to MK, at a starting rate of 13.50 per hour, commensurate with his previous work history and the unskilled, entry-level nature of his job.

3. The October 9, 2014 Job Description, signed by MK.

4. GX 590 – the July 2017 PSI organization chart, setting forth the separate operations and outsourcing divisions of PSI as of the earliest date for which such chart is available.

As set forth above, and as reflected in these documents, the government has incorrectly

identified MK was a skilled outsource employee coming within the category of workers (engineers

and other skilled employees working on Pratt projects on an outsource basis) that form the basis

of the charge. Given the erroneous nature of the government's assumption, the undersigned

2

respectfully submits that the government should voluntarily withdraw its proffer and determine whether the premise it has advanced is correct.  Absent evidence that MK was engaged in the outsource work for Pratt to which the charged conspiracy is expressly limited, GX 109 is not relevant, and will mislead the jury and further compound the deficiencies in the nature and scope of the government's case.

  As indicated earlier there has been **no** evidence that Mr. Prus was a member of the alleged conspiracy as of May 2015. To the contrary, the very evidence the government points to – the testimony of Mr. Lavoie concerning a conversation he overheard between Mr. Prus and Mr. Patel, was described as occurring "a couple years" before 2019 – i.e., long after May 2015. *See* Ruling and Order, *supra*, ECF 536, at 6, *citing* Tr. Vol. II at 277:18-278:5, 279:20-23.  Pursuant to the prerequisites set forth in that Order, the admission of co-conspirator hearsay such at GX 109 first requires evidence that the defendant had already become a member of the conspiracy, as demonstrated by non-hearsay evidence, and there is none here.  On this independent ground alone, GX 109 should be excluded.

*/s/ Kenneth Rosenthal*
KENNETH ROSENTHAL (ct05944)
Law Office of Kenneth Rosenthal
One Audubon Street, 3d Fl.
New Haven, CT 06511
T:(203) 915-4235
F: (203) 306-3286
Email: krosenthal@gs-lawfirm.com

AUDREY A. FELSEN (ct20891)
Koffsky & Felsen, LLC
1150 Bedford Street
Stamford, CT 06905
T: (203) 327-1500
F: (203) 327-7660
Email: afelsen@aol.com

*Counsel for Gary Prus*

4

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 19, 2023, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's CM/ECF system.

<u>*/s/ Kenneth Rosenthal*</u>
Kenneth Rosenthal
Federal Bar No. ct05944